IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0337-09






ROBERT L. GONZALES, Appellant


v.


THE STATE OF TEXAS





ON APPELLANT'S AND STATE'S PETITIONS

FOR DISCRETIONARY REVIEW

FROM THE SEVENTH COURT OF APPEALS

LUBBOCK COUNTY




 Price, J., delivered the opinion for a unanimous Court.


O P I N I O N



 Appellant was charged with and convicted of two counts of aggravated sexual assault
against his eight-year-old daughter, the jury having found that he had both anal (Count I) and
vaginal (Count II) intercourse with her during a single incident. On the morning that his jury
trial was to commence, the appellant filed a motion for appointment of a medical expert to
assist him in evaluating the State's medical evidence and a written motion for continuance
so that he might have time to take full advantage of the assistance of that expert. The trial
court granted the motion for court-appointed expert, but denied the motion for continuance. 
In a motion for new trial, the appellant complained of the denial of the continuance. The trial
court denied the motion for new trial without conducting a hearing. We granted petitions for
discretionary review from both the appellant and the State to address, respectively, whether
the trial court erred to deny the appellant's motion for new trial without first conducting a
hearing, and whether the trial court violated the Fifth Amendment prohibition against double
jeopardy by authorizing conviction, over the appellant's objection, for both counts of
aggravated sexual assault.

THE APPELLANT'S PETITION

The Procedural Posture

 The offenses are alleged to have occurred in July of 2005. The appellant was
originally indicted in that same year and counsel was appointed to represent him. In April
of 2006, the trial court granted original counsel's motion to withdraw. The trial court
appointed new counsel to represent the appellant in May of 2006 and granted at least one
defense motion for continuance. On November 7, 2006, the appellant was re-indicted. Trial
commenced on January 22, 2007. By that time the appellant's new trial counsel had been on
the case for more than eight months. On that same day--the first day of trial--the appellant
filed an ex parte motion for the appointment of a medical expert. In the motion he alleged
that his review of the child-victim's medical records "shows technical medical issues relating
to the issue of penetration." For this reason, he contended, due process required the
appointment of a defense expert to help evaluate those medical records and assist trial
counsel in preparing for trial. Also on the first day of trial, the appellant filed a written
motion for continuance, incorporating his ex parte motion for expert assistance by reference
and arguing that his "constitutional right to due process, right to confrontation of witnesses
and cross examination of witnesses will be violated due to lack of a pretrial setting to
incorporate [his] Ex Parte Motion." (1) At a brief hearing prior to commencement of voir dire,
the trial court granted the appellant's motion for the appointment of an expert, but denied his
motion for continuance.

 After trial, the appellant filed a motion for new trial. He complained that the trial
court's action in denying his motion for continuance "and in granting his motion regarding
expert assistance only on the day of trial, deprived [him] of various of his constitutional
rights." However, while the appellant remarked that trial "counsel with whom he proceeded
to trial . . . was not his original counsel in this cause[,]" implying that there had been
insufficient time to prepare for trial, he failed to note that his new trial counsel was appointed
more than eight months prior to the actual trial date. He also conspicuously failed to mention
that he had not filed his ex parte motion for appointment of an expert until the morning of
trial. The trial court denied the appellant's motion for new trial without conducting an
evidentiary hearing.

 On appeal, the appellant complained, inter alia, that the trial court abused its
discretion to deny his motion for new trial without first holding a hearing. In an unpublished
opinion, the Seventh Court of Appeals disagreed. (2) The court of appeals held that "all of the
allegations raised in appellant's motion for new trial were determinable from the trial record
and accordingly, we find no abuse of discretion." (3) Albeit for reasons different than those
assigned by the court of appeals in its unpublished opinion, we agree that the trial court could
have determined the merits of the appellant's motion for new trial wholly from the record and
that it was therefore not an abuse of discretion for the trial court to deny the motion for new
trial sans hearing. (4)

Analysis

 We recently reiterated the applicable standard of appellate review:

 When examining a trial court's denial of a hearing on a motion for new
trial, we review for an abuse of discretion. In so doing, we reverse only when
the trial judge's decision was so clearly wrong as to lie outside that zone
within which reasonable persons might disagree. And in the absence of [such]
an abuse of discretion this Court would not be justified in reversing the
judgment. Our review, however, is limited to the trial judge's determination
of whether the defendant has raised grounds that are both undeterminable from
the record and reasonable, meaning they could entitle the defendant to relief. 
This is because the trial judge's discretion extends only to deciding whether
these two requirements are satisfied. If the trial judge finds that the defendant
has met the criteria, he has no discretion to withhold a hearing. In fact, under
such circumstances the trial judge abuses his discretion in failing to hold a
hearing. (5)


In the instant case, we need not decide whether the appellant's pleading presented reasonable
grounds to justify a new trial. We conclude that the appellant's claim could be resolved on
the basis of the existing record and that the trial court was fully justified in denying the
appellant's motion for new trial without recourse to further factual development in an
evidentiary hearing.

 The appellant argues that he needed an evidentiary hearing in order to establish how
he was harmed by the trial court's failure, after affording him an appointed expert, to also
afford that expert a reasonable opportunity, prior to trial, to review the child-victim's medical
records so that he could help counsel prepare for trial. It is certainly the case that, in order
to prevail on his motion for new trial, a defendant must demonstrate that the trial court's
failure to grant his pretrial motion for continuance prejudiced him. As Professors Dix and
Dawson point out in their treatise:

 Denial of [a pretrial motion for delay or continuance] will be found an
abuse of discretion on appeal only if the record shows with considerable
specificity how the defendant was harmed by the absence of more preparation
time than he actually had. This showing can ordinarily be made only at a
hearing on a motion for new trial, because almost always only at that time will
the defendant be able to produce evidence as to what additional information,
evidence or witnesses the defense would have had available if the motion for
delay had been granted. (6)


Establishing harm, however, while necessary, is not a sufficient prerequisite to obtaining
appellate relief. A defendant must preliminarily demonstrate that the trial court erred to deny
the pretrial continuance in the first place. Professors Dix and Dawson continue:

 In addition to this necessary showing of harm, an appellant must
apparently also show that the trial judge's ruling on the motion was error. This
most likely requires a showing that the case made for delay was so convincing
that no reasonable trial judge could conclude that scheduling and other
considerations as well as fairness to the State outweighed the defendant's
interest in delay of the trial. Appellate courts have not addressed this,
however, because convicted defendants have never [been] able to make the
necessary specific showing of harm. (7)


We now explicitly hold that, in order to show reversible error predicated on the denial of a
pretrial motion for continuance, a defendant must demonstrate both that the trial court erred
in denying the motion and that the lack of a continuance harmed him. In a motion for new
trial, he should allege facts tending to establish both prongs--error and harm. In ruling on
the appellant's motion for new trial in this case, if the trial judge could make a determination
based on the existing record that he had not erred to deny the appellant's pretrial motion for
continuance, he was not required to hold a hearing in order to make a record with respect to
whether the appellant was harmed.

 Here, the trial court was fully justified in concluding that it had not erred to deny the
appellant's pretrial motion for continuance. In Wright v. State, (8) which involved an appeal
from a capital-murder conviction, the appellant argued that the trial court erred to deny his
motion for continuance to allow defense experts to evaluate the State's DNA evidence. In
Wright, as here, the appellant did not complain of a lack of expert assistance, but only that
his experts lacked sufficient time to provide adequate assistance. But there, as here, the
appellant failed to request the appointment of an expert until the first day of trial. We
rejected the appellant's claim, finding that Wright had failed to establish prejudice but adding
that, "even if [he] could point to specific prejudice under this point of error, he would not
now be allowed to profit from his own failure to act." (9)

 In essence, Wright injects a diligence requirement as a precondition for a continuance
based upon the need for additional trial preparation. A motion for continuance based upon
the unavailability of a witness is expressly governed by statute and must "state" the diligence
used to secure the presence of the missing witness for trial. (10) There is no comparable
statutory provision that governs a pretrial motion for continuance for the purpose of securing
expert assistance. But that just means that the resolution of such a motion is "particularly
within the discretion of the trial court." (11) Here, the appellant made no attempt in his pretrial
motion for continuance to explain why he could not have requested expert medical assistance
sooner than the first day of trial. We are unable to say that the trial court would have abused
its discretion to require the motion for continuance to contain an allegation of diligence in
seeking expert assistance in a sufficiently timely manner as to avoid the necessity to delay
a trial setting. The trial judge could reasonably have rejected the appellant's motion for
continuance because it failed to state either the diligence the appellant exercised in trying to
obtain expert assistance sooner or, alternatively, how circumstances conspired to prevent him
from realizing any earlier that he required such assistance. The trial court did not need to
hold a hearing on the motion for new trial in order to determine that it had not erred to deny
the appellant's motion for continuance, and it therefore did not abuse its discretion.

THE STATE'S PETITION

The Procedural Posture

 The appellant has been twice convicted for what he contends is the same offense in
the course of a single prosecution. The question is whether the Legislature intended that he
could be subjected to such multiple punishments. The court of appeals recognized that the
double-jeopardy issue devolves into a question of legislative intent. (12) The court of appeals 
ultimately concluded that, because both theories of aggravated assault (anal and vaginal
penetration) are contained in the same subsection of the penal provision, the Legislature must
have considered them to be the "same" for double-jeopardy purposes. (13) The court of appeals
therefore set aside the appellant's conviction under Count II of the indictment, alleging
vaginal penetration. (14) The State, via the State Prosecuting Attorney (SPA), now contends
that the court of appeals overemphasized the formal structure of the statute to the detriment
of other relevant, and ultimately determinative, considerations. We agree.

The Law

 In relevant part, Section 22.021 of the Penal Code provides:

 (a) A person commits an offense:


 (1) if the person:


* * *


 (B) intentionally or knowingly:


 (i) causes the penetration of the anus or sexual
organ of a child by any means;


 (ii) causes the penetration of the mouth of a child
by the sexual organ of the actor;


 ii) causes the sexual organ of a child to contact or
penetrate the mouth, anus, or sexual organ of
another person, including the actor;


 (iv) causes the anus of a child to contact the
mouth, anus, or sexual organ of another person,
including the actor; or


 (v) causes the mouth of a child to contact the anus
or sexual organ of another person, including the
actor; and


 (2) if:


* * *


 (B) the victim is younger than 14 years of age[.] (15)


In this case, the appellant was convicted and sentenced in a single prosecution under two
theories of aggravated sexual assault--anal and vaginal penetration--both emanating from
the same subsection of the statute (Section 22.021(a)(1)(B)(i)), and committed during the
same transaction. The court of appeals held that this constituted two punishments for the
same offense, in violation of the Double Jeopardy Clause.

 The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through
the Fourteenth Amendment, (16) protects an accused against a second prosecution for the same
offense for which he has been previously acquitted or previously convicted. (17) It also protects
him from being punished more than once for the same offense in a single prosecution. (18) 
Sameness in this latter context is purely a matter of legislative intent. (19) "With respect to
cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more
than prevent the sentencing court from prescribing greater punishment than the legislature
intended." (20) The traditional indicium of that legislative intent is the so-called "same
elements" test of Blockburger v. United States. (21) According to that test, it should be
presumed that the Legislature did not regard two statutorily defined offenses to be the same
so long as "each provision requires proof of a fact which the other does not." (22) However, for
purposes of multiple-punishment analysis, the Blockburger test is only a tool of statutory
construction--and not even an exclusive one. (23) An accused may be punished for two
offenses even though they would be regarded as the same under a Blockburger analysis if the
Legislature has otherwise made manifest its intention that he should be.

 In Ex parte Ervin, (24) we recognized that "[t]he Blockburger test's status as a mere rule
of statutory construction raises an inverse conclusion as well: the Blockburger test cannot
authorize two punishments where the legislature clearly intended only one." (25) Thus, even
if a straightforward application of the Blockburger test would suggest that two offenses are
not the "same" for double-jeopardy purposes, if other indicia manifest a legislative intent that
an accused not be punished for both offenses if they occur in the course of a single
transaction, then an accused may not be punished for both offenses. Ervin provided a non-exclusive catalog of considerations to help courts determine legislative intent in this context:

 whether the offenses['] provisions are contained within the same statutory
section, whether the offenses are phrased in the alternative, whether the
offenses are named similarly, whether the offenses have common punishment
ranges, whether the offenses have a common focus (i.e. whether the
"gravamen" of the offense is the same) and whether that common focus tends
to indicate a single instance of conduct, . . . and whether there is legislative
history containing an articulation of an intent to treat the offenses as the same
or different for double jeopardy purposes. (26)


In its analysis in the instant case, the court of appeals found all of the Ervin considerations
to support a conclusion that the Legislature intended that penetration of the anus and sexual
organ should constitute the same offense for jeopardy purposes.

 The SPA challenges the court of appeals's conclusion with respect to two of those
considerations. First, the court of appeals opined that "[t]he focus of the offenses is the
same: penetration of the child's genital area." (27) Second, the court of appeals found
particularly significant that the Legislature could not, in the court of appeals's view, have
intended "to provide multiple punishments for two acts falling under a single subsection" of
the same statute. We agree with the SPA that the court of appeals: (1) overgeneralized to
declare that the focus of the relevant subsection of the aggravated sexual assault statute to
be "penetration of the child's genital area"; and (2) overemphasized the fact that anal and
vaginal penetration are proscribed by the same subsection of the statute.

Analysis

 Six weeks after we issued our opinion in Ex parte Ervin, we handed down Vick v.
State. (28) In Vick, we addressed a slightly different issue than the one presented in the instant
case. Vick had been convicted in separate prosecutions for two instances of aggravated
sexual assault under different subsections of Section 22.021 that occurred during the same
transaction. (29) In the first prosecution, he was acquitted of causing the penetration of the
victim's sexual organ with his own (Section 22.021(a)(1)(B)(i)). In the second prosecution,
he was again charged with aggravated sexual assault, stemming from the same transaction,
but this time it was alleged that he caused the victim's sexual organ to contact his mouth
(Section 22.021(a)(1)(B)(iii)). (30) The trial court granted Vick's motion to dismiss the second
indictment on double-jeopardy grounds. (31) The State appealed, but the court of appeals held
that the alternative ways of committing aggravated sexual assault that are set out in the
various subsections of Section 22.021 constitute alternative methods of committing the same
offense, not separate offenses for double-jeopardy purposes. (32)

 When the State petitioned this Court for discretionary review, we reversed. We held
that the various subsections of Section 22.021define separate offenses, summarizing that:

 Sec. 22.021 is a conduct-oriented statute; it uses the conjunctive "or" to
distinguish and separate different conduct; and its various sections specifically
define sexual conduct in ways that usually require different and distinct acts
to commit. These considerations lead us to conclude that the Legislature
intended that each separately described conduct constitutes a separate statutory
offense. (33)


Because the separate subsections defined separate offenses, we found no double-jeopardy
violation in prosecuting Vick a second time under a different subsection of the statute than
the subsection under which he had been previously acquitted.

 The differences between Vick and the instant case are two-fold. First, Vick was a
multiple-prosecution case, and not, as here, a multiple-punishment case. But what we said
about legislative intent with respect to multiple prosecution would apply with at least as
much force in the multiple-punishment context, wherein the Blockburger test is merely
presumptive while legislative intent is absolutely determinative. If the Legislature intended
different subsections of the aggravated sexual assault statute to constitute separate offenses
for purposes of whether an accused may be twice prosecuted for the "same" offense, it would
have harbored no different intent for purposes of whether he may be twice punished. The
second difference between Vick and this case is, therefore, the more crucial. In Vick, the
separate theories of aggravated sexual assault emanated from separate subsections of Section
22.021. Here, the separate theories derive from the same subsection. From this fact, the
court of appeals deduced that the two theories constituted separate manner and means of
committing the same offense under Section 22.021(a)(1)(B)(i), and therefore concluded that
the appellant could not constitutionally be punished for committing both.

 But our reasoning in Vick did not necessarily turn on the fact that the separate theories
of aggravated sexual assault were incorporated in separate subsections of the statute. 
Otherwise, we could not have later observed, as we did in Haight v. State, (34) in the course of
construing and applying Vick, that another penal code provision's "various phrases and
subsections separated by the disjunctive 'or,' . . . [are] at least some indication that any one
of the prohibited types of conduct would constitute a separate offense." (35) This observation
reflects our understanding that, at least for a nature-of-conduct type of penal provision, the
separately defined acts that are proscribed therein typically evince a legislative intent that
they be construed to constitute separate offenses, not mere manner and means of committing
a single offense. Beyond this, the observation in Haight also reflects our understanding that
this identifier of legislative intent is not limited to separate acts as defined in separate
subsections of such a nature-of-conduct penal provision. In construing such a provision, we
may appropriately infer that the Legislature intended to create separate offenses for double-jeopardy purposes by virtue of the fact that it chose to proscribe separate acts in separate
phrases, even within the same subsection, so long as those phrases are disjunctive and
embrace discretely prohibited acts.

 More recently, we have signaled that the "focus" or "gravamen" of a penal provision
should be regarded as the "best" indicator when it comes to determining whether the
Legislature intended to define more than one offense. The question in Huffman v. State, (36)
was whether the Legislature intended to create more than one offense for jury-unanimity
purposes. Observing that double-jeopardy and jury-unanimity issues constitute "closely
intertwined strands of our jurisprudence[,]" (37) we surveyed a number of our previous
decisions from both strands, including Vick, and concluded:

 The common thread in all of these cases seems to be "focus." We use
grammar and we look to other factors bearing on whether different legal
theories constitute the 'same' offense or 'different' offenses, but those tools
seem useful mainly as an aid to determining focus. The focus or 'gravamen'
of the offense seems to be one of the best indicators of the allowable unit of
prosecution prescribed by the legislature. If the focus of the offense is the
result--that is, the offense is a 'result of conduct' crime--then different types
of results are considered to be separate offenses, but different types of conduct
are not. On the other hand, if the focus of the offense is the conduct--that is,
the offense is a 'nature of conduct' crime--then different types of conduct are
considered to be different offenses. (38)


In Vick, we recognized that the aggravated sexual assault statute defines a "conduct-oriented"crime. (39) It follows from that observation that the different types of conduct that are
proscribed in that statute should ordinarily be regarded as different offenses for purposes of
the Double Jeopardy Clause, absent a more conclusive or compelling sign of contrary
legislative intent such as an explicit expression in the statute itself that such offenses should
be subject to only one punishment if they stem from a single incident or transaction. (40)

 The court of appeals was not wholly unmindful of our emphasis on the focus of a
penal provision in determining legislative intent vis-à-vis allowable units of prosecution from
a single statute. Pointing to language from Vick itself, the court of appeals concluded that
the focus of each of the alternative theories of aggravated sexual assault contained in
Subsection 22.021(a)(1)(B)(ii) "is the same: penetration of the child's genital area." (41) And
it is true that we said as much in Vick. (42) But we said so in the context of describing the
distinctions among the various subsections of the statute, in order to illustrate that each
subsection "entails different and separate acts to commit the various, prohibited conduct." (43) 
We went on to observe that "this specificity [within the subsections of the statute] reflects
the legislature's intent to separately and distinctly criminalize any act which constitutes the
proscribed conduct." (44) What is true of the various acts specified in the different subsections
of this nature-of-conduct statute is no less true of the various acts specified within separate
and disjunctive phrases in the same subsection. (45) Either way, such specificity in a conduct-oriented statute ordinarily reflects a legislative intent that each discretely defined act should
constitute a discrete offense. Penetration of the anus constitutes a discrete act from
penetration of the sexual organ, even if they occur within a short period of time. That both
the anus and sexual organ may be anatomically located in the "genital area" does not render
the separate acts of penetration the "same" offense for double-jeopardy purposes. The court
of appeals erred to conclude otherwise.

 Accordingly, we hold that there was no double-jeopardy violation when the appellant
was convicted under both Count I and Count II of the indictment. The Legislature intended
that penetration of a child's anus should be regarded as a distinct offense from penetration
of her sexual organ even if they occur during the course of the same incident or transaction. 
Because the appellant has suffered no greater punishment than the Legislature intended, the
Double Jeopardy Clause is not implicated.

CONCLUSION

 We affirm the judgment of the court of appeals insofar as it affirmed the appellant's
conviction with respect to Count I of the indictment. We reverse the judgment of the court
of appeals to the extent that it set aside Count II of the indictment. We remand the cause to
the court of appeals for disposition of the appellant's third point of error on appeal,
pertaining to his conviction under Count II of the indictment, which the court of appeals
declined to reach on original submission because of its erroneous dismissal of Count II on
double-jeopardy grounds.


DELIVERED: February 24, 2010

PUBLISH
1. In his reply brief, the State Prosecuting Attorney argues that the appellant thus asserted that
a continuance was necessary only in order to afford a "pretrial setting" at which he could establish
the need for an expert, and that "[t]he trial court could have reasonably believed that appointing the
expert obviated the need for either a pretrial hearing or a continuance." State's Reply Brief, at 7. 
We need not address this argument in view of our ultimate disposition of the appellant's petition.
2. Gonzales v. State, No. 07-07-0036-CR, 2009 WL 498032 (Tex. App.--Amarillo, delivered
February 27, 2009) (not designated for publication).
3. Id. at *3.
4. The court of appeals alternatively held that the appellant failed to request a hearing on his
motion for new trial. Id. at *4. Our ultimate disposition of the appellant's petition on the merits
obviates the need to address this alternative, procedural default rationale.
5. Smith v. State, 286 S.W.3d 333, 339-40 (Tex. Crim. App. 2009) (internal quotation marks
and footnotes omitted).
6. George E. Dix & Robert O. Dawson, 42 Texas Practice: Criminal Practice and
Procedure § 28.56 (2d ed. 2001), at 532-33.
7. Id. at 533.
8. 28 S.W.3d 526 (Tex. Crim. App. 2000).
9. Id. at 533.
10. See Tex. Code Crim. Proc. art. 29.06(2) (a first motion for continuance requesting delay
"on account of the absence of a witness" must "state" "[t]he diligence which has been used to
procure his attendance[.]").
11. See Dix & Dawson, supra, at 531 (emphasis added) ("A request for delay to permit further
investigation or other preparation for trial is based on nonstatutory and therefore equitable grounds. 
It is particularly within the discretion of the trial court. Denial of a motion on these grounds will be
held reversible error on appeal from a conviction only if the trial judge is found to have abused his
discretion.").
12. Gonzales v. State, supra, at *5.
13. Id. at *6.
14. Id. at *7.
15. Tex. Penal Code § 22.021.
16. Brown v. Ohio, 432 U.S. 161, 164 (1977).
17. Id. at 165.
18. Id.
19. Missouri v. Hunter, 459 U.S. 359, 368 (1983); Ex parte Kopecky, 821 S.W.2d 957, 959
(Tex. Crim. App. 1992).
20. Missouri v. Hunter, supra, at 366.
21. 284 U.S. 299 (1932).
22. Id. at 304.
23. Villanueva v. State, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007); Garza v. State, 213
S.W.3d 338, 351-52 (Tex. Crim. App. 2007).
24. 991 S.W.2d 804 (Tex. Crim. App. 1999).
25. Id. at 807.
26. Id. at 814.
27. Gonzales v. State, supra, at *6.
28. 991 S.W.2d 830 (Tex. Crim. App. 1999).
29. Id. at 831.
30. Id.
31. Id.
32. Id. at 832.
33. Id. at 833.
34. 137 S.W.3d 48 (Tex. Crim. App. 2004).
35. Id. at 50 (emphasis added).
36. 267 S.W.3d 902 (Tex. Crim. App. 2008).
37. Id. at 905; see also Villanueva v. State, supra, at 747 ("We doubt that the Legislature would
have meant for us to construe the 'act or omission' alternative of Section 22.04(a) of the Penal Code
as merely alternative means of committing the same offense for jury-unanimity purposes, but as full-blown separate offenses, authorizing multiple punishments, for purposes of double jeopardy
analysis."); Gamboa v. State, 296 S.W.3d 574, 583 (Tex. Crim. App. 2009) (jury unanimity and
double jeopardy "address the same basic question").
38. Huffman v. State, supra, at 907.
39. Vick v. State, supra, at 832.
40. Compare, e.g., Garza v. State, supra, at 351-52 (although application of Blockburger test
suggested that two offenses were the same for double-jeopardy purposes, statutory language
providing that an accused could be punished for both constituted sufficiently clear indicium of
legislative intent as to defeat Blockburger presumption).
41. Gonzales v. State, supra, at *6.
42. See Vick v. State, supra, at 833 ("Section (i) prohibits penetration of a male or female child's
anus or the sexual organ of a female child. The focus is on penetration of the child's genital area.")
43. Id.
44. Id.
45. Haight v. State, supra. See also Pizzo v. State, 235 S.W.3d 711, 718 (Tex. Crim. App. 2007)
(holding that three disjunctive phrases contained within same subsection of indecency-with-a-child
statute specified three separate offenses for jury-unanimity purposes, citing Vick).